James O'Brien and others v. Larry O'Brien, No. 5, 18-0185. Good afternoon, Your Honors. May it please the Court, Counsel. My name is Chris Custer and I represent James O'Brien et al. in this case. And we are here by an order, a judgment order, entered February 23, 2018. Justice Cates and Justice Chapman will appreciate the fact that we're here by a judgment order. But I believe three weeks ago I was here and my opposing counsel, Steve Stone, who I like a lot, a good lawyer, suggested to the Court that they couldn't consider, suggested to this Court that they couldn't consider the order, only the two-sentence judgment that was typed. No, it was more than two sentences. Maybe three. He said that we couldn't consider docket entries. We're supposed to ignore the judge's thoughts, Judge Breyer's thoughts on the order. The good news in this case, we have Judge Harrell's judgment order, 15 pages. So judgment order, all the same thing, we know that that is crucially important. And because there's so much in there, I'm going to get into that right now. The first issue that just leapt out of that order, unfortunately, was Judge Harrell's reference to criminal charges filed against my client, Jim O'Brien. They were pending in Richland County Court, criminal misdemeanor damage to property. Even though there was no evidence, we discussed it during the trial, of course you can't consider that. Judge Harrell, not once, but twice, specifically referenced and relied upon that pending charge, not conviction, pending charge on page 7 of the judgment order, on page 383 of the Commonwealth Record. In her order, she specifically says, and I quote, Jim, my client, is charged with criminal damage to property, a misdemeanor, in 13CM23, which remains pending. Still remains pending, by the way. This court had ruled that it sustained the objection, my objection to the court, as to the partnership property, but, but, she says, this court is considering the actions of Jim as to whether or not to award attorney's fees. So she specifically references that, and says, I'm considering this charge, this criminal charge, in connection with my analysis in this case. Of course it's not relevant, of course it's not prohibitive, and of course it's prejudicial. But it didn't stop there. Later, on page 8C384 of the record, she states, and I quote, Larry testified in his discovery proposition, which is another issue I'll get to in a moment, that Jim used his tractor to ram Larry's truck and break Larry's cell phone on December 5, 2012. Here's the important part. Jim has a criminal charge pending for criminal damage to property in 13CM23. Do you think that, that every one of the citations from the discovery depositions were necessary for her to enter this judgment? I think when I went through the discovery depositions, they weren't all necessary. In fact, some of them overlapped some of the trial testimony. But it's very clear, as the justices well know, that you don't use discovery deposition transcripts in a trial, absent the specific limitations and restrictions and exceptions set forth in Supreme Court Rule 212, which doesn't exist. They are, is the deponent dead? And that was recently changed over the last several years. You can use it if they're dead. Larry wasn't dead. This is Larry O'Brien's deposition. And was the deponent not available for trial? Maybe they're overseas, perhaps they're out of state. Larry was there for all eight days of this trial. So there's no reason they should have used that. But getting back to the criminal charges, not only as Justice, as Judge Harrell said, she sustained my objection. This also came up during the context of the trial. And at page 928 of the record, when there was some reference to the criminal charge of taking judicial notice, I said during the trial, and I quote, Judge, are you saying that you're going to take judicial notice of all the files in this courthouse, including any criminal file that is pending? You're not saying, are you? You believe that a charge of someone committing a crime, a charge of a crime, is relevant to the case, are you? The court acknowledges, no, this is a civil case. So then I indicate, all right, thank you, I have no more questions. But clearly, for whatever reason, an opposing counsel didn't even try to suggest that it was relevant. Judge Harrell, upon her own initiative to do it laterally, for some reason, considered a criminal charge, again, which remains pending, and importantly, the only complainant was Larry O'Brien, the other side in this case. So do we have feuding brothers here? Absolutely. It's a travesty. It's a tragedy. But there's no way, there is no precedent anywhere of considering a charge of a crime. Even with criminal convictions, we use them very sparingly in civil cases, right? If it's a felony you're convicted of, sometimes you can use it as impeachment. And if it's a misdemeanor involving dishonesty, sometimes we can use that as impeachment. But there's no suggestion anywhere that you can use the charge of a crime. Secondly, and almost as troubling, is Judge Harrell's reference to the fact that Larry O'Brien was not charged for a crime. She relied upon that twice. When weighing the credibility, this case was all about weighing credibility, she made two specific references in her judgment order, in writing. These are her words that she used. Page 6 of her judgment order, page 382 of the common law record, and I quote, Jim later accused Larry of damaging property, which Larry denies. Larry testified he did not find out about it until the depositions in June of 2014. Walter Russ said, I was aware the relationship was acrimonious at the time. He found out the next day the equipment wasn't deep damaged. The next part is the important part. No criminal charges were filed against Larry. And not only does she say that in her judgment order, she underlines it. She adds emphasis to the fact that criminal charges were not filed against Larry. Of course that's not relevant. Then on page 13 of the judgment order, 389 to the record, Judge Harrell says in her order, Jim claims that Larry damaged the 8520 John Deere tractor and the 8430 John Deere tractor, both of which were Jim's tractors and not partnership property. Jim did not see the damage, nor were there eyewitnesses. Larry has not been charged criminally with criminal damage to property and denied doing so. Accordingly, she used the word accordingly right after she underlines that. The charge is denied. So she almost is bad, perhaps or worse, maybe, of considering a criminal damage to charging, it's my client, again, still pending, Larry O'Brien, the sole complainant. She's saying the fact that Larry was not charged is also probative, and of course that's wrong. So those are two things that just leap out, just leap out of this 15-page order. Justice Cates already referenced one of the other matters, discovery depositions. We all know Supreme Court Rule 212 about discovery depositions. We all know when we talk to our young lawyers about discovery depositions, the difference between discovery depositions and evidence depositions are testimony that we can go to trial. We know that everything is fair game. You get this much in a discovery deposition. You want to find out everything, the good stuff, the bad stuff, everything. But then we know when we're at trial, this becomes this in an evidence deposition or trial. Eighty percent of what is usually discussed in a discovery deposition is not admissible in a trial. A foundation, hearsay, you name it, there's all sorts of, and that's why we have discovery depositions that would find out these things. Ten times, ten times Judge Harrell specifically in her 15-page judgment order referenced specifically Larry O'Brien's discovery deposition, which no one even suggested that she would consider or read. The only reason that she was able to obtain possession of Larry O'Brien's deposition was that, like in any other trial that we use discovery depositions, I used it to impeach Larry. And if you look at the transcript, Larry was my first witness called as my first witness. And I impeached him four or five or six times. And I used that discovery deposition and said, here you go, Judge, to complete our impeachment. Here is the transcript for Larry O'Brien where you can see he testified differently at trial than he did in his discovery deposition, but we made it very clear this is not evidence. It's only completing the impeachment with the discovery deposition. Now, this actually came up when Attorney Klein, who is not here, he was cross-examining my client, Jim O'Brien. And during one of the questions, he appeared to be reading from Jim O'Brien's discovery deposition. And on March 19, 2015, this is on page 411 of our record, I indicated, says Mr. Kuster, just for the record, I want to make sure, Your Honor, the issue of when and whether dissociation occurs is one of the issues that you're going to have to determine in this case. And it's going to be based upon testimony and evidence received by this court during the trial and not by discovery deposition transcripts. So as we're talking about August and December difference, and the court's going to decide this based upon the evidence presented before, not the transcripts. Because, again, Mr. Klein was trying to read from the discovery deposition of my client's deposition. Do you think that, I mean, clearly the record indicates that this was being introduced only for impeachment. And there are only several pages that were read, but yet the entire deposition was admitted with that caveat because I read the record. That is absolutely true. In fact, we go on, on page 412 of the record, the court says, Okay, Mr. Klein, we'll carry on with your cross-examination. And Mr. Klein says, I'm referring to Mr. O'Brien's deposition. Give me a second to see where I was. And at that point I interject, and I quote, Your Honor, while Mr. Klein is doing that, I think it's inappropriate to simply read discovery deposition transcripts into the record. They can be used for impeachment. But I think we're beyond that. I think we need to ask a question as opposed to reading a discovery deposition transcript. And the court says, and I quote, Is the form of an impeachment question? Mr. Custer, correct. The court says, sustained. So she clearly says, yes, you're not supposed to read discovery depositions into the transcript. So do you think, let's assume hypothetically that it wasn't an abuse, that we don't get to the weighing of the credibility here. Do you think that this court as a matter of law can rule that the use of a discovery deposition to support the order is error in and of itself, just that issue alone? I think yes, and let me tell you why, Justice Gates. If this were merely, and again, none of us know. The opposing counsel doesn't know. Why did she do this? But if it was merely supporting a couple of items that we've already received testimony, real testimony and evidence, and it just was duplicative of that, then I think you could say, well, maybe no harm in that. That would clearly be inappropriate under Supreme Court Rule 212. You could absolutely say, yes, we're very clear under 212. You cannot receive them. You cannot receive them. So, and again, I got to thinking about this case when I, I mean, when I read this order, I almost fell over. And I got to thinking, oh, my goodness. She read and considered and cited ten times in this order the discovery deposition, which, again, is out here and is limited to here. And then the next thought occurred to me, oh, my word. She didn't have my client's deposition. At least it would have been fairer if she could have heard my client's deposition or read that. It was 151 pages in a discovery debt. You've taken discovery debts. You know there's three hours in federal courts, there's seven, eight hours. There's stuff in there that you would never, ever dream that would reach the court. But at least it would have been more fair and appropriate and proper, yes, but more fair if they had Jims. She didn't have Jims because Mr. Klein, the attorney in trial counsel, did not impeach Mr. O'Brien or certainly didn't complete the impeachment by providing the discovery deposition. So after I read that over three times, I never dreamed this would happen. It's clearly error. And, again, it had letters only, not hours. Well, it wouldn't have made it any better, I guess. No, no. But it's still terrible. It's still absolutely violative of our Supreme Court rules, including 212. It's still terrible. But at least we would have had the benefit of knowing, at least she would have read our client's side of the story in the 150 pages. She had one side of this story, one side of this story, inappropriate as it was. And then another matter that was just sort of leapt out at me was, as we all know under the partnership statute, 701 is effectively, 701I is effectively a statute of limitations. In the old world, before the Uniform Partnership Act was adopted by Illinois, if someone left, it automatically was a default dissolution. Not anymore. When they changed the law, the partnership act said, no, wait a minute. The partnership has a right to continue to operate the partnership. There's a dissociation of a partner, in this case Larry, and they can, but the partnership gets to keep going. And then certain things are supposed to happen. There's a statute of limitations. Larry O'Brien, if he wanted a judicial evaluation of his stuff, what he believed to be his stuff, which was certainly subject to a lot of dispute, he was required to file within 120 days of the offer from the partnership a complaint. He didn't do it. He didn't do it whether he thought that November 2011 kitchen meeting between Jim and Larry was the offer. He didn't do it whether he thought it was the meeting at the machine shop, because Jim wanted to have the taxes done. 120 days was blown there. Mr. Fleming, Jeff Fleming, he was the attorney for the O'Briens. And if he did think those were good enough under 701 of the act, Jeff Fleming drafted an agreement, a buyout agreement. Jim O'Brien signed it. The closing date was February 7, 2012, and it was provided to Larry O'Brien and his counsel now well before February 7. They still didn't do anything. But if you assume that the last date you could ever assume, February 7, 2012, the closing date, 120 days from there would be June. They blew the statute of limitations in 701I of the Partnership Act. Because there was an offer which was signed by both parties? No. The reason they blew the statute of limitations is the statute started when the partnership through Jim O'Brien made an offer. Here's what the partnership believes you are entitled to. And if you disagree with it, Mr. Larry O'Brien, you're required within 701I of the act to file suit. They didn't do it. They blew it. But how did the judge ever handle that? Well, amazingly, it's the only word I can use. On page 383 of the record, he basically gave me the pass because Larry didn't know that the Partnership Act required it. In fact, when I got involved in the case, I learned that they were unaware that the partnership continued and the dissociated partner couldn't help it. So he actually says on page 7 of the order, 383 of the Commonwealth Record, the partnership was based upon a pattern of conduct. Now, that's not right. It's based upon the Partnership Act. But here's the important part. I quote, there is no evidence that Larry even knew that he was required to commence the action within 120 days after the tender of the offer. So what? I mean, think about how many cases you've heard where somebody who had a meritorious claim blew the statute of limitations and they lost heaven's knows. Judge Harrell gave him the pass. And then it's even worse than that, if you can imagine. He says, she says on page 384 of the record, Larry's own attorney did not think the Partnership Act prohibited it. As you may recall reading from the record, they went and got an ex parte TRO trying to keep the partnership from using a piece of equipment. Well, under the Partnership Act, clearly the Partnership Act had an absolute right to continue. Larry had to stay out of it and without even giving me notice, believe it or not, got a TRO against me. That's what a TRO is, no notice. Well, there's with notice and without notice, right? Right. And in 29 years, I've never, when there's an attorney on their side, not given the other side notice when they have an attorney. Especially when they know they have an attorney. Absolutely. Right.  Thank you, Justices. Thank you. We can, we'll take a pause here. Okay. She's grabbed herself and she'll be right back in court. Thank you. You may proceed. Thank you, Your Honor. Your Honor, Counsel. My name is David Williams. I represent the defendant, Larry O'Brien. I did not represent him at the underlying cause. And I came in after the time for filing an appeal or a cross appeal had lapsed. In any event, this matter involves a cooperative farming agreement, arrangement between two brothers, Larry and James O'Brien. Started in 1980, ended, didn't, actually it hasn't ended yet by the law. But in any event, in August of 2011, Larry gave notice to James of his will to withdraw. I'm not fawning with you anymore after this crop year. The court was found that with a partnership, well, frankly, there's more factors that are not in this case than there are with regard to a partnership. But the court found it implied, well, I haven't asked the court to find it implied, in fact, partnership. It also, the court would seem to be appropriate to find a partnership under the wills, the jury instruction for that particular issue, which basically is a generalized organization for the mutual benefit of the partners. In any event, there was imputed a partnership by the court. All the pleadings, the pleadings started out by the plaintiff saying there was a partnership. The defendant said, I agree with the partnership, we admit there was a partnership. The pleadings were amended, there is a partnership. And all the arguments at trial, all the evidence submitted was based on the issue that there was, in fact, a partnership. Is somebody disputing there's not a partnership? What? Is somebody disputing that there wasn't a partnership? No, I'm not. No, is anybody disputing that? No, nobody disputed that there was a partnership. Okay. However, I think it's important to know that there was never a partnership agreement. Okay, so there's an implied one that it was not. And the court found it to have started in circa 1980. Right, but the court also, what about the court's reference in this case to the fact that your client didn't know about the partnership law? Is he to be given, as they say, a pass on that issue? Just because you don't know about the law, it doesn't apply to you on the statute of limitations? Well, there's an old adage, ignorance of the law is no excuse. You got it. And I'm not arguing that there should be. What I'm saying is that there was a partnership, and because it's longstanding, and the fact that it rolled over every year. Every year it was the same deal, farm, ground, farm, ground, farm, ground. It was a farming partnership. As such, as said both in my brief, it is an at-will partnership. The at-will partnership was found to be so by the judge in her findings. An at-will partnership, the partner has the right to withdraw at any time. Okay, but what about the applicability of the statute of limitations in that regard? That he did write a letter saying, I'm leaving. You don't have to. Under the code, as said both in my brief, you do not have as long as your will to withdraw is communicated to a partner or to someone on behalf of the partner, such as an attorney. You do not have to be in writing. The code does not require a writing to say the will to withdraw. As a matter of fact, James knew it because he acted upon it, basically. In any event. But they're saying that when your client came and said, I'm getting out, under the partnership law that that began the statute of limitations. No, it's not. Not under 701. It's an at-will partnership. And if there is no other intervening circumstance, it goes to 801. Okay. 801 has no timetable. Okay. 701 has the timetable. 701 talks in terms of a buyout provision. Either from either party, but from the withdrawing partner. 801 talks in terms of winding up. The partnership is dissolved at the time of expression giving notice of your will to withdraw. That does not mean the partnership is at an end or terminated. The judge, the court, the counsel, everybody talks in terms of end and terminated. Throughout the pleadings, throughout the arguments, throughout the judgment. It's not ended yet. That's what I was just going to ask you. Is it your position the partnership has not ended yet? That's right. You've answered that. Okay. It is in the process of winding up. Okay. Let me ask you, sir, about the use of the discovery deposition. Yes. A discovery deposition is not to be used as evidence, but may be used for impeachment, right? I agree totally with that. Okay. In this judge's order, she goes to great lengths to put in specifically the page number that she uses from the discovery deposition. And even in her order says DD means discovery deposition. I agree with that. Okay. And just for the record, I'm kind of raising my voice because you're hard of hearing, I understand. Do you agree with that? Okay. So you agree that she used a discovery deposition to enter her order? Yes, I do. That's contrary to the rule of 215, isn't it? It's there. Then why are we here? If it's error, as you just said, why are we here? There can be harmless error. In a civil case. There can be harmless error. The issue is whether or not it was necessary for her to even consider that deposition. The issue that I raised in my appeal is that if we go to 801 as a dissolved at-will partnership, the stance is winding up. And if you can't agree on how to wind up, then for good cause shown, you can ask the court to judicially supervise the winding up. Agreed. And I'm asking everybody on both sides in all their pleadings, never ask for a buyout. They always ask for distribution of the property, for this, everything that goes along with winding up, even though they gave lip service to 701. Section 701 is there, yes. Okay. But in her order doing that, distributing the proceeds, things like that, she specifically relies upon factual information from the discovery deposition, which you agree is error. Yes. Well, then she can't do that in her order if she relied on facts from a discovery deposition. That's error. What I'm saying is, is that it's not necessary for you to consider that error. But in her, I specifically, you may not have heard it, I asked that question of opposing counsel. I asked him, can you have this order resolve everything without, if we deleted every one of her references to the discovery deposition, would we have the same order? Yes, you would. Okay. And the reason for that being is, under 801, there is no need, there is no provision for attorney fees. And as I, with my brief, there's no evidence as to attorney fees. Most, if not all, of the issues raised by counsel for the plaintiff with regard to the offending discovery deposition deal with attorney fees. Well, for example, it says, and I'm on page C379 of the record, it says, I'm quoting from the judge's order, and it says, did the partnership end? This has nothing to do with attorney fees. It says, at the end of the year, I'm no longer going to farm with you. Quote, in his discovery deposition, Larry testifies that he told Jim, quote, come next year, I'll no longer be farming with you, DD67. She uses that line, not the testimony, but that line, the discovery deposition, to start the point where Larry says, Jim, come, I'm not farming with you next year. So she's using that fact as a starting point, right? If I delete that, what am I left with? Yes, it is. There's testimony to that effect at trial from both parties. Now, there was some disagreement between the brothers as to whether he said, at the end of the year, or whether he said, I'm quitting now. That's right. There was a disagreement, and yet she refers to the discovery deposition to resolve that disagreement, doesn't she? Or was she not? As I said, I think she was wrong, the judge was wrong, excuse me, in saying that it ended at all. Okay. But my point is, we have a judgment in front of us. On the issue of when did the partnership end, she makes a decision. You think that was wrong because the partnership is continuing. That's correct. Okay. But we're left as a court of appeal with this judgment. So from what you're saying is, this section, issue one, is totally wrong. Because she says the partnership ended on whatever date. December 31st. Right. December 31st. So now I've got two pages of single-spaced judgment that we should throw out? Yes, because it hasn't ended. That's why we're here. If you don't deal with the partnership having come to an end, you're still where you're at as far as divvying up the proceeds. You're still in the winding up process under 801. And I'm asking the court to consider what the parties did backhandedly, maybe not even intentionally, asked for the same relief as winding up. They made the same arguments as winding up. They did the same thing. And the judge all did. She cited 701, basically took it up under 801 and did basically an equitable winding up. You did this and you did that. Now, I will state for the record that I believe that there were some non-partnership properties that were considered in the order as far as making, let's say, an equal division among the brothers, between the brothers, if I may. I think there's certain property that they owned, that they used, that each of them used, that were co-owned. They just intermittently used each other's tractor or hoe or whatever other instrument there is out there to farm with. And some of it was co-owned, yes. A lot of it was not. But they considered it in their distribution as having a value for the distribution of the partnership assets. The same way with the issues of who tore up what machinery. The machinery they're talking about is not partnership machinery. The issue is over here somewhere, suing. If somebody tore up your tractor, sue him. There's small claim courts out there every day. Somebody tore up my garage door, which is in there, too. The garage door has nothing to do with the partnership. The issue, all these things need to be settled outside the issue of partnership. Everything's conglomerated together. Everything, partnership, non-partnership, profits. Profits, there are no profits. They just took their grain in kind and took whatever beating they had or didn't have. They didn't do anything that a partnership does, but it was found to be a partnership, imputed in fact. The parties agreed to it. Parties can stipulate the facts. They can't stipulate as to the law. They can't stipulate that 701 is the guiding light when 801, in my argument, makes much better sense. Just by cleaning it, just by arguing 701, does not make it so. Now, you can agree that there's a partnership. That's imputed in fact. It's not imputed in law, or implied, excuse me, implied in fact or implied in law. It's not implied in law because an implied in law contract is only to cure an injustice that might be made. Implied in fact. It makes a difference as we're going through here because you can, the court, on a day note of its natal review, can find that that partnership existed as a matter of fact. What do we do, what do we do with things like quotations where it says transcript, 11, 18, 15, and then in number 7 in C382 of the record it says, Larry testified that he observed Jim on surveillance video. And then it goes on for more lines. But it cites to the discovery deposition, not to the transcript. What do we do with that? She, it was not always perfect. Okay. So are you saying, are you telling me that this citation is really to the record or that the citation is correct but she shouldn't have done that? Well, to tell you the truth, I probably knew at one time but hit me with a cold. I really can't, I can't speak to it, Your Honor. That's fair, thank you. The, I'm asking the court to consider that the court did equity, which it had the power to do under the EPA, that it took back the reins and did a judicial supervision of the winding up. So what you're saying is that even if we would remand this, it would be the same result? Yes. And you're happy with that result? Except for some of the, some of the, who gets this rape and who gets that shovel and who gets this and who gets that. That may need to go back and be revisited. I don't doubt that. You do? So you do think that a remand could be necessary? But with directions. But with directions on what? Well, as I said in my brief, as to the 801 controls. Okay. That it is a winding up, that it is a judicial supervision. Oh, okay. I, I, I realize that. That it is an admiral partnership, that it is this, it is that. Okay. So you, okay, I understand. Not as any particular thing. The one last thing I want to touch base on is attorney fees. There's no evidence in the record whatsoever, trial record, of an amount, type. No affidavit. No affidavit. Nothing about attorney fees. Therefore, in my opinion, my opinion, my argument, is that you should not consider attorney fees at all. And that it seems, I could not find a case for the love of me, that would indicate that you can't go back on remand and submit another affidavit. So are you, I'm not sure I understand. She says each party shall pay their own attorney's fees. Why are you unhappy with that? Well, I mean, he's asking for remand. No, but attorney fees, are you saying if upon remand? Well, he's asking for remand based upon various uses by the judge of this. Right, but when you say remand with instructions, you want us to find that neither party should have to pay attorney fees? You can under section 801. No, I'm asking what you want. Oh, sure. Yeah, sure. Thank you, Your Honor. Thank you, Counsel. We're both. Justices, it's been a long morning, which is now turning to an afternoon, so I'm going to be very brief. You mentioned attorney's fees and affidavits, and in fact, when I was, I really wondered how the attorney was going to handle this. Reference to criminal charges, discovery depositions, lack of knowledge is an excuse. Like that was. That all went to attorney's fees, and there were no affidavits, no testimonies regarding attorney's fees, so it all comes out, which is wrong. And I'll make it very clear. I think he's admitted that the use of the discovery deposition was there. You're right. I mean, I think that's conceded now. Right. But at least from my perspective, I don't speak for the court. My question to you is this. What about the fact that if I line out every discovery deposition reference, will there be sufficient evidence in the record from which this court could make these divisions and these findings? No. Why not? Because, well, first of all, think about how my client must feel. He's just heard for the first time the other side concedes that the judge made error, should have never read the discovery deposition, let alone refer to it ten times in the judgment order. 151 pages she read. And then he says, okay. And she didn't even hear my side of the story. We went through all of this, and mutilated the judge, chooses my, Larry's deposition, doesn't review mine. So, no, there's no way someone in Jim O'Brien's position or my position could think, even though she's read it, even though she's relied upon it, even though she cited it in the judgment order, that it's all harmless. And there's no way, there's no way that could be harmless to her. Let me ask you this, because your brief moments might turn into a little longer. Okay. Paragraph D of her order, where she says, the court accepts the 2011 valuation from Jim. Do you think that is a credibility determination? Like, were two valuations submitted in the record, and then she had to pick one? How did that, why does that language appear, that the court accepts the 2011 valuation from Jim? Did Larry provide a valuation? Is that a question? That's a good question. There were some parts of the order I just couldn't decipher. But I think what she was referring to is that in the period between November of 2011 and late January of 2012, when there were four attempts by my client on behalf of the partnership, because under 701, they were continuing the partnership. They were trying to do what he was supposed to do before the dissociating partner. There were invoices. On the second, they actually went through and said, here's what everybody owns. Here's what everybody doesn't own. I've got mine. I've got yours. And I think she was starting with the proposition that she thinks that probably made some sense. But how she got to where she ended up, I don't know. What does that mean, how she got to where she got? I need more specifics in my head. You mean generally in the order? I'm just trying to find out. There was some valuation from Jim. Right. Obviously your client. I'm sorry. Go ahead. They were called invoices. There were three. And I think it was 2011, 2012, and 2012A. That's where in November in Jim's kitchen in 11, and then at the Larry's machine shop, they actually went through and said, this is what we believe. I own the partnership. It doesn't own this. This is what I think it's worth. So in her order, when she says, for example, she says a dirt scoop. Larry's position, Jim's position. Granted, denied. And then it gets down to $23,000. So there's an inconsistency in my mind in this order. And I know you don't have it in front of you, but the first two is the dirt scoop and the Forest City do-all, whatever that is, denied. So she didn't allow for that. And then she goes into Bush Hog, et cetera, and values them at $23,500. But she's choosing between Jim's position and Larry's position. And so what I'm wondering is, in order to do that, did she take into account, for example, this whole criminal issue as a credibility determination that came out of the discovery deposition? Absolutely, yes. You have to speak up. Absolutely, yes. Okay. You can't try to amend this order by elimination. It simply doesn't work. Not with everything that she has done. And if I may just finish one thought. With regard to the attorney's fees, on page 944 and 945 of the record, we state on the record, the parties also stipulate and agree that because the Partnership Act does allow for the court to award attorney's fees, the parties agree to reserve the right to prove up their attorney's fees. We'll await the court's decision to determine whether that's going to be appropriate. The court says, Mr. Klein, Mr. Klein says, and I quote, I will adhere to everything that he's mentioned and stipulated to in writing between us last night. The court says, okay. So we reserve the right, which we do typically at all defense trials. If there's an issue of attorney's fees, we will come back to that. David's raised a right hand, expert testimony if necessary. So we didn't waive it on the issue of attorney's fees. Thank you. All right. Thank you very much. Thank you, counsel, for your arguments. The court will take this matter under advisement. We'll hear a decision at due course.